**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JAMES MEYERS,**<br>**Y12393,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**JOSEPH O'BEAR,**<br>**RANDY SCHOONOVER,**<br>**VILLAZON SANCHEZ,**<br><br>**Defendants.** | ) | **Case No. 25-cv-1690-DWD** |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff James Meyers, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Lawrence Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 concerning events that occurred at Pinckneyville Correctional Center. (Doc. 3). Upon review of the original complaint, the Court designated two claims to proceed related to alleged excessive force by Defendants Sanchez and Schoonover and a failure to intervene by Defendant O'Bear. Defendants have now filed a Motion for Summary Judgment on the issue of exhaustion of administrative remedies (Doc. 25). Plaintiff did not respond, however, the Court finds it appropriate to deny the Defendants' motion for legal reasons explained herein.

## Background

Plaintiff alleges that while he showered on June 30, 2025, Defendant Sanchez walked by and whistled at him while peering into the shower. (Doc. 3 at 3). Sanchez

then returned to cuff him up and made a lewd sexual comment, to which Plaintiff replied he was not homosexual and did not appreciate the remark. Upset at the remark, Sanchez walked off, returning with Defendants O'Bear and Schoonover. Plaintiff complied with a directive to cuff up, and handcuffs were placed behind his back. On the walk to his cell, Schoonover kept roughly pushing him, and upon arrival at the cell Schoonover thrust him into the cell and began punching him, pulling his hair, and bashing his head into the wall. Plaintiff alleges that Sanchez joined the physical assault, while O'Bear stood outside and closed the door to obscure the altercation. During the assault, Plaintiff alleges that Sanchez fondled his buttocks and genitals. (Doc. 3 at 4).

Eventually, the officers exited the cell, but Schoonover insisted that his hands remain restrained through the chuckhole. Plaintiff alleges his arms and wrists were further contorted and battered in this position before he was released from the restraints. (Doc. 3 at 4). He was concerned that he would lose consciousness due to the pain, though he does not allege this actually occurred.

Based on the foregoing allegations, Plaintiff was allowed to proceed on the following claims:

**Claim 1:** **Eighth Amendment excessive force claim against Defendants Sanchez and Schoonover for their conduct on June 30, 2025;**

**Claim 2:** **Eighth Amendment failure to intervene claim against defendant O'Bear for failing to stop the conduct of Sanchez and Schoonover on June 30, 2025.**

(Doc. 9 at 3, 8). Two additional claims were dismissed without prejudice.

The Defendants have identified two grievances filed during the relevant timeframe, only one of which bears factual relevance to the operative claims in this suit.

## FINDINGS OF FACT

In a grievance dated July 1, 2025, and assigned number K59-0725-3092, Plaintiff alleged that while showering on June 30, 2025, Defendant Sanchez walked by and whistled at him. (Doc. 25-2 at 12). When Sanchez returned to cuff Plaintiff, Sanchez said something like "I'm liking what I see." (*Id.*). Plaintiff asked Sanchez not to speak to him in that manner, and he alleged Sanchez got mad and walked away. Sanchez returned with Defendants Schoonover and O'Bear, Plaintiff was directed to cuff up, and Plaintiff complied. Plaintiff alleges on the walk to his cell Schoonover was pushing him from behind with his restrained arms and that at the cell Schoonover shoved him inside and pulled the cuffs high above his head, causing serious shoulder pain. Plaintiff alleges Schoonover and Sanchez then began to punch and batter him. He claims Sanchez grabbed his buttocks and genitals. Plaintiff alleges that at the conclusion of the battering, his arms were pulled out of the cell door through the cuff port and he was battered further before the cuffs were removed. (*Id.* at 13). As relief, Plaintiff asked the grievance committee to "review and preserve the camera footage," he indicated he felt that he was in danger, and he asked that the officers either be kept away from him or he be sent to another prison. (*Id.* at 12). The grievance was denied emergency status on July 19, 2025. (*Id.*).

On August 7, 2025, the grievance officer deemed the grievance "resolved" because there was an external investigation that had been initiated in response to the allegations.

(Doc. 25-2 at 11). The Warden concurred. (*Id.*). There is no indication on the grievance form itself that Plaintiff appealed. An officer of the Administrative Review Board attested that the Board did not receive an appeal for grievance K59-0725-3092, despite receiving another timely appeal during the relevant timeframe. (Nothnagle Decl., Doc. 25-1 at 4).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See* *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no

genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If an inmate does not know an individual's name, he may still file a grievance by describing the individual. 20 Ill. Admin. Code § 504.810(c).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

For an emergency grievance, an inmate may direct his request to the Chief Administrative officer, who will determine if the issue should be handled as an emergency. 20 ILL. ADMIN. CODE § 504.840(a)-(c). If the grievance is not deemed an emergency, the inmate must return to the normal grievance channels to resubmit the grievance as non-emergent. *Id.*

B. Analysis

The Court finds that the Motion for Summary Judgment can be resolved on paper without a *Pavey* hearing because there are no genuine disputes of fact. Plaintiff did not file a response, so the Defendants' factual assertions are treated as true, but the record has still been interpreted broadly in Plaintiff's favor. Plaintiff obviously had access to the grievance procedure, but the legal question remains if Plaintiff was required to appeal to

the ARB given that the grievance officer and CAO deemed the grievance "resolved." Significantly, the primary relief Plaintiff sought in the grievance was the preservation and review of the camera footage. The grievance response indicating that an external investigation had been opened, and deeming the grievance resolved, seems to afford the very relief Plaintiff desired. The Administrative Code explicitly says that an inmate need only appeal to the ARB if the grievance "has not been resolved to his or her satisfaction." 20 Ill. Admin. Code §504.850(a). Furthermore, the Seventh Circuit has indicated an inmate does not need to appeal if he receives the relief he sought before the end of the grievance process. *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005) ("the defendants' notion that Thornton should have appealed to higher channels after receiving the relief he requested in the grievance is not only counter-intuitive, but it is not required by the PLRA.").

## Disposition

The Motion for Summary Judgment on the issue of exhaustion (Doc. 25) is **DENIED in full.** Claim 1 may proceed against Defendants Sanchez and Schoonover, and Claim 2 proceeds against Defendant O'Bear. A merits discovery schedule will follow.

**IT IS SO ORDERED.**

Dated: November 20, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.11.20 10:43:35 -06'00'

DAVID W. DUGAN
United States District Judge